GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:     ALEXANDER LI
            Assistant United States Attorney
            One St. Andrew's Plaza
            New York, New York 10007
            (212) 637-2265

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v.- | : | |
| | : | |
| $4,730 FORMERLY ON DEPOSIT IN BANK | : | |
| OF AMERICA ACCOUNT   ENDING IN -6851, | : | VERIFIED CIVIL COMPLAINT |
| HELD IN THE NAME OF FARDAD | : | FOR FORFEITURE |
| IZADKHAST, | : | |
| | : | 20 Civ.   3262 |
| $570 FORMERLY ON DEPOSIT IN BANK OF | : | |
| AMERICA ACCOUNT ENDING IN -5282, | : | |
| HELD IN THE NAME OF MEHDI KALAI, | : | |
| | : | |
| $10,000.00 FORMERLY ON DEPOSIT IN | : | |
| WELLS FARGO BANK ACCOUNT ENDING | : | |
| IN -0168, HELD IN THE NAME OF MAHDI | : | |
| AZMANDIAN, | : | |
| | : | |
| $9,500.00 FORMERLY ON DEPOSIT IN | : | |
| WELLS FARGO CERTIFICATE OF DEPOSIT | : | |
| ACCOUNT ENDING IN -0965, HELD IN THE | : | |
| NAME OF JAFAR JAVADPOUR, | : | |
| | : | |
| $2,068.26 FORMERLY ON DEPOSIT IN | : | |
| BANK OF AMERICA ACCOUNT ENDING IN | : | |
| -5623, HELD IN THE NAME OF REZA | : | |
| GHESHLAGHI, | : | |
| | : | |

| | |
|---|---|
| $17,000 FORMERLY ON DEPOSIT IN CITIBANK ACCOUNT ENDING IN - 0108, HELD IN THE NAME OF MARYAM AZMANDIAN, | : : : : : |
| and | : : |
| $84,650 FORMERLY HELD IN CAPITAL ONE ACCOUNT ENDING IN -6115, HELD IN THE NAME OF FATEMEH AZMANDIAN, | : : : : : |
| Defendants-*in-rem*. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

Plaintiff United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

## I.  JURISDICTION AND VENUE

1.      This action is brought pursuant to Title18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), and 984 by the United States of America seeking the forfeiture of the following:

    a.    $4,730.00 formerly on deposit in Bank of America account ending in - 6851, held in the name of "Fardad Izadkhast" (the "Izadkhast Currency");

    b.    $570.00 formerly on deposit in Bank of America account ending in -5282, held in the name of "Mehdi Kalai" (the "Kalai Currency");

    c.    $10,000.00 formerly deposit in Wells Fargo Bank account ending in - 0168, held in the name of "Mahdi Azmandian" (the "Mahdi Azmandian Currency");

    d.    $9,500.00 formerly on deposit in Wells Fargo Bank Certificate of Deposit Account ending in -0965, held in the name of "Jafar Javadpour" (the "Javadpour CD Currency");

2

e.  $2,068.26 formerly on deposit in Bank of America account ending in -5623, held in the name of "Reza Gheshlaghi" (the "Gheshlaghi Currency");

f.  $17,000 formerly on deposit in Citibank account ending in -0108, held in the name of "Maryam Azmandian" (the "Maryam Azmandian Currency"); and

g.  $84,650 formerly on deposit in Capital One account ending in -6115, held in the name of "Fatemeh Azmandian" (the "Fatemeh Azmandian Currency"); and

(collectively, the "Defendants-*in-rem*").

2.      This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.      Venue is proper pursuant to Title 28, United States Code, Section 1395 because the Defendants-*in-rem* are currently held in the Seized Asset Deposit Fund Account of the United States Marshals Service (the "USMS") located within the judicial district for the Southern District of New York. Venue is also proper pursuant to Title 28, United States Code, Section 1355 (b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

4.      As set forth below, there is probable cause to believe that the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) as proceeds traceable to the commission of violations of Title 18, United States Code, Sections 1343 (wire fraud) and/or property involved in violations of 1956 (money laundering) and 1957 (monetary transactions involving property of specified unlawful activity), or property traceable thereto.

3

## II.  **PROBABLE CAUSE FOR FORFEITURE**

5.      This action arises out of an investigation conducted by the Federal Bureau of Investigation ("FBI") into multiple victims of a telephone scam based fraud (the "Scheme"). Since at least in or about December 2018, multiple victims have received phone calls from an unknown individual or individuals purporting to be officials at the FBI or the Social Security Administration, among other agencies. At the direction of the callers, the victims were fraudulently induced to transfer substantial sums of money into bank accounts identified by the callers.

6.      In the course of the investigation, law enforcement officials identified bank accounts into which the proceeds of the fraud were transferred or distributed. As a result, the government obtained seizure warrants on, May 21, 2019, , October 10, 2019, December 9, 2019 and January 29, 2020 for the contents of various accounts (the "Seized Accounts") which contained the proceeds of the fraud, or that were involved in or facilitated the fraud, or that contained monies traceable thereto. Those warrants were executed and the contents of the accounts thereafter seized by the United States Marshals and deposited the funds in the Seized Asset Deposit Fund Account with the Federal Reserve Bank.

7.      By this Complaint, the United States is now seeking the forfeiture of the funds formerly held in the Seized Accounts, and now held in the Seized Asset Deposit Fund Account, herein referred to collectively as the Defendants-*in-rem*. Probable cause for the forfeiture of each of the Defendants-*in-rem* is set out more fully below.

<u>The Izadkhast Currency</u>

8.      On or about February 27, 2019, a 64-year-old nurse ("Victim-1") received a phone call from an unknown caller while working at a hospital in New York, New York. Over

4

the course of multiple phone and text message communications, the caller explained, in sum and substance, that he was an FBI agent, that Victim-1's identity had been stolen, and that Victim-1's identity had been used to commit crimes. The caller informed Victim-1 that she would need a new social security number, and that, in order to protect her assets, Victim-1 needed to transfer her money into secure accounts provided by the caller. The caller further informed Victim-1 that she needed to immediately leave work to make the transfers, that she should not contact any third party, and that she would be arrested if she did not comply.

a. At the caller's instruction, on or about February 27, 2019, Victim-1 entered a credit union branch located in New York, New York. At that location, Victim-1 made a $30,500 wire transfer to Bank of America account ending in 1418, held in the name of "Jay & Jay IT Solutions, LLC" ("BOA Account-1").[1]

9. Around the same time, on or before February 25, 2019, a 76 year-old woman ("Victim-4")[2] received a phone call from an unknown caller. The caller explained, in sum and substance, that he was an officer with the Social Security Administration, that Victim-4's identity had been stolen, and that he would help Victim-4 recover her identity.

10. At the caller's instruction, on or about February 25, 2019, Victim-4 drew two (2) cashier's checks for $25,000 each (for a total of $50,000). Both checks were then deposited into BOA Account-1.

---

[1] This account, as well as other accounts referenced herein, is not one of the accounts from which the Defendants-*in-rem* were directly seized, but is an intermediary account through which the fraud proceeds flowed, sometimes to other accounts or financial instruments, before reaching the accounts from which the Defendants-*in-rem* were seized.

[2] The numbering of the victims is not consecutive for the purposes of this Verified Complaint, but are so numbered to remain consistent with the accompanying seizure warrants obtained in this investigation.

11.     On or about February 26, 2019, $4,730 was transferred from BOA Account-1 to Bank of America account ending in 6851 held in the name of "Fardad Izadkhast" (the "Izadkhast Account").

12.     On or about February 28, 2019, an additional $3,270 was transferred from BOA Account-1 to the Izadkhast Account, for a total of $8,000 to the Izadkhast Account.

13.     On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued multiple Seizure Warrants under 19 Mag. 4913 ("Seizure Warrants-1," a copy of which is attached as Exhibit A, and incorporated herein by reference) authorizing the seizure of, *inter alia*, all funds up to $8,000 held in the Izadkhast Account upon a finding that the Izadkhast Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

14.     On or about May 22, 2019, the Government seized $4,730 in United States currency from the Izadkhast Account — *i.e.*, the Izadkhast Currency — pursuant to Seizure Warrants-1.

<u>The Kalai Currency</u>

15.     As described above, BOA Account-1 received $50,000 on or about February 25, 2019 from Victim-4, and $30,500 on or about February 27, 2019 from Victim-1, for a total of $80,500.

16.     On or about February 26, 2019, $570 was transferred from BOA Account-1 to Bank of America account ending in 5282, held in the name of "Mehdi Kalai" (the "Kalai Account").

17.     On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued Seizure Warrants-1 authorizing the seizure of, *inter alia*, all funds up to

6

$570 held in the Kalai Account upon a finding that the Kalai Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

18.     On or about May 22,, 2019, the Government seized $570 in United States currency from the Kalai Acount — *i.e.*, the Kalai Currency — pursuant to Seizure Warrants-1.

<u>The Mahdi Azmandian Currency</u>

31.     On or about March 7, 2019, an individual ("Victim-3") received a phone call from an unknown caller. The caller told Victim-3, in sum and substance, that he was "Officer Alex O'Connor," that Victim-3's identity had been stolen, and that Victim-3's identity had been used to commit crimes. The caller instructed Victim-3 that she would need a new social security number, and that, in order to complete that process, Victim-3 needed to transfer her money into secure accounts provided by the caller.

32.     At the caller's instruction, on or about March 8, 2019, Victim-3 made a $30,000 wire transfer to JPMorgan Chase Bank, N.A. ("Chase") account ending in 5689, held in the name of "Melany Morelis Mendez Montano" (the "Montano Account").

33.     On or about March 9, 2019, a cashier's check in the amount of $10,000 was drawn from the Montano Account and deposited into Wells Fargo Account ending in 0168, held in the name of "Mahdi Azmandian" (the "Mahdi Azmandian Account").

34.     On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued Seizure Warrants-1 authorizing the seizure of, *inter alia*, all funds up to $10,000 held in the Mahdi Azmandian Account upon a finding that the Mahdi Azmandian Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

35.     On or about May 22, 2019, the Government received $10,000 in United

States currency from the Mahdi Azmandian Account — *i.e.*, the Mahdi Azmandian Currency — pursuant to Seizure Warrants-1.

The Javadpour CD Currency

36.      As described above, the Montano Account received $30,000 on or about March 8, 2019 from Victim-3.

37.      On or about March 9, 2019, a cashier's check in the amount of $9,500 was drawn from the Montano Account and deposited into Wells Fargo account number ending in 1441, held in the name of "Jafar Javadpour" (the "Javadpour Account"). Following this deposit, the Javadpour Account held a balance of approximately $50,325.

38.      On or about March 29, 2019, $48,000 was transferred from the Javadpour Account to Wells Fargo CD Account ending in 0965 (the "Javadpour CD"), leaving a balance of approximately $2,325 in the Javadpour Account. Because this remaining balance was less than the $9,500 received from the Montano Account, funds from the Montano Account were used to purchase the Javadpour CD.

39.      On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued Seizure Warrants-1 authorizing the seizure of, *inter alia*, the Javadpour CD upon a finding that the Izadkhast CD contained funds representing proceeds traceable to and/or property involved in the Scheme.

40.      On or about May 22, 2019, the Government seized $9,500 in United States Currency from the Javadpour CD — *i.e.*, the Javadpour CD Currency — pursuant to Seizure Warrants-1.

The Gheshlaghi Currency

41.     As described above, the Montano Account received $30,000 on or about March 8, 2019 from Victim-3.

42.     On or about March 9, 2019, a cashier's check in the amount of $3,000 was drawn from the Montano Account and deposited into Bank of America account ending in 5623 in the name of "Reza Gheshlaghi" (the "Gheshlaghi Account").

43.     On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued Seizure Warrants-1 authorizing the seizure of, *inter alia*, all funds up to $3,000 held in the Gheshlaghi Account upon a finding that the Gheshlaghi Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

44.     On or about May 22, 2019, the Government seized $2,068.26 in United States currency from the Gheshlaghi Account — *i.e.*, the Gheshlaghi Currency — pursuant to Seizure Warrants-1.

The Maryam Azmandian Currency

45.     As described above, the Montano Account received $30,000 on or about March 8, 2019 from Victim-3.

46.     On or about March 9, 2019, a cashier's check in the amount of $3,265 was drawn from the Montano Account and deposited into Citibank Account ending 0108 in the name of Maryam Azmandian (the "Maryam Azmandian Account").

47.     On or about May 21, 2019, the Honorable Debra Freeman, United Sates Magistrate Judge, issued Seizure Warrants-1 authorizing the seizure of, *inter alia*, all funds up to $3,265 held in the Maryam Azmandian Account upon a finding that the Maryam Azmandian

Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

48.     On or about May 22, 2019, the Government seized $3,265 in United States currency from the Maryam Azmandian Account — *i.e.*, $3,265 of the $17,000 constituting the Maryam Azmandian Currency — pursuant to Seizure Warrants-1.

\*       \*       \*

49.     On or about February 25, 2019, an individual ("Victim-6") received multiple phone calls from an unknown caller. The caller identified himself as "Alex O'Connor" from the "U.S. Department of Criminal Justice." The caller explained, in sum and in substance, that Victim-6's identity had been compromised and had been used to commit crimes. The caller informed Victim-6 that she would need a new social security number, and that, in order to protect her assets, Victim-6 needed to transfer her money into accounts provided by the caller and his colleagues.

50.     At the instruction of the caller, on or about February 25, 2019, Victim-6 made a $40,000 wire transfer to Chase account ending in 7855, held in the name of "Victor Andretti Dalolio Saigh" (the "Saigh Account").

51.     On or about February 25, 2019, a $7,000 cashier's check from Chase, with the remitter "Victor Andretti Dalolio Saigh," was deposited into the Maryam Azmandian Account.

52.     On or about March 6, 2019, an individual ("Victim-8") received a phone call from an unknown caller. The caller stated, in sum and substance, that the caller was from the FBI, that Victim-8's identity had been used to commit crimes, and that warrants were outstanding for Victim-8's arrest. The caller told Victim-8 that to assist in the investigation,

Victim-8 needed to shut down her bank accounts and transfer her money into accounts provided by the caller.

53.    At the instruction of the caller, on or about March 6, 2019, Victim-8 made a $25,100 wire transfer to Chase account ending in 7906, held in the name of "Carlos Jesus Villavicencio Olivares" (the "Olivares Account").

54.    On or about March 6, 2019, a $6,735 cashier's check from Chase, with the remitter "Carlos Jesus Villavicencio Olivares," was deposited into the Maryam Azmandian Account.

55.    On or about October 10, 2019, the Honorable Ona T. Wang, United States Magistrate Judge issued Seizure Warrant 19 Mag. 9504 ("Seizure Warrant-2," a copy of which is attached as Exhibit B, and incorporated herein by reference) authorizing the seizure of all funds up to $13,735 on deposit in the Maryam Azmandian Account upon a finding that the Maryam Azmandian Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

56.    On or about October 10, 2019, the Government seized an additional $13,735 in United States currency from the Maryam Azmandian Account — *i.e.*, $13,735 of the $17,000 constituting the Maryam Azmandian Currency — pursuant to Seizure Warrant-2.

57.    The Government seized a total of $17,000 from the Maryam Azmandian Account pursuant to Seizure Warrants-1 and Seizure Warrant-2.

<u>The Fatemeh Azmandian Currency</u>

58.    As set forth more fully below, the Fatemeh Azmandian Currency comprises proceeds obtained from six victims of the Scheme, identified herein as Victim-7, Victim-9, Victim-10, Victim-11, Victim-12, and Victim-13. The proceeds constituting the

Fatemeh Azmandian Currency were deposited into Capital One account ending in 6115, held in the name of "Fatemeh Azmandian" (the "Fatemeh Azmandian Account").

Victim-7

59.    On or about February 28, 2019, an individual ("Victim-7) received a phone call from an unknown caller. The caller identified himself as "Alex O'Connor" from the "Massachusetts State Police." The caller explained, in sum and in substance that Victim-7's identity had been compromised and had been used to commit crimes. The caller informed Victim-7 that she would need a new social security number, and that, in order to protect her assets, Victim-7 needed to transfer her money into accounts provided by the caller and his colleagues.

60.    At the instruction of the caller, on or about March 5, 2019, Victim-7 made a $40,000 wire transfer to Chase account ending in 5927, held in the name of "Santiago Pardo" (the "Chase Pardo Account").

61.    On or about March 6, 2019, a $10,000 cashier's check, made payable to "Fatemeh Azmandian," was drawn from the Chase Pardo Account.

62.    On or about March 6, 2019, a $10,000 cashier's check from Chase, with the remitter name "Santiago Pardo," was deposited into Capital One account ending in 5598, held in the name of "Fatemeh Azmandian" (the "Second Alternate Capital One Account"), *i.e.*, the same name as that on the Fatemeh Azmandian Account.

63.    On or about March 13, 2019, $10,000 was transferred from the Second Alternate Capital One Account to the Fatemeh Azmandian Account.

Victim-9

64.     On or about February 26, 2019, an individual ("Victim-9") received a phone call from an unknown caller whose phone number appeared to be from the Freemont, California Police Department. The caller stated, in sum and substance, that the caller was with the police, that Victim-9's identity had been used to commit crimes, and that Victim-9 would be arrested if she did not cooperate. The caller instructed Victim-9 to transfer her money into accounts provided by the caller.

65.     At the instruction of the caller, on or about February 26, 2019, Victim-9 made a $25,000 wire transfer to Wells Fargo account ending in 1987, held in the name of "Victor Dalolio" (the "Dalolio Account").

66.     On or about February 27, 2019, a $10,000 cashier's check, made payable to "Fatemeh Azmandian," was drawn from the Dalolio Account at Wells Fargo.

67.     On or about February 27, 2019, a $10,000 cashier's check from Wells Fargo, with the remitter name "Victor Dalolio," was deposited into Capital One account ending in 7532, held in the name of "Fatemeh Azmandian" (the "First Alternate Capital One Account"), *i.e.*, the same name as that on the Fatemeh Azmandian Account and the Second Alternate Fatemeh Azmandian Account.

68.     On or about March 2, 2019, $10,000 was transferred from the First Alternate Capital One Account to the Fatemeh Azmandian Account.

Victim-10

69.     On or about March 5, 2019, an individual ("Victim-10") received a phone call from an unknown caller. The caller stated he was a police officer and redirected Victim-10 to another person, who identified himself as "Alex O'Connor" with the federal authorities. The

callers explained, in sum and substance, that Victim-10's identity had been compromised and had been used to commit crimes. The callers informed Victim-10 that she would need a new social security number, and that, in order to avoid arrest and adverse immigration consequences, Victim-10 needed to transfer her money into accounts provided by the callers.

70.     At the instruction of the callers, on or about March 6, 2019, Victim-10 made a $29,000 wire transfer to Citibank account 6796305172, held in the name of "Santiago Pardo" (the "Citi Pardo Account").

71.     On or about March 7, 2019, $7,810 was debited from the Citi Pardo Account.

72.     On or about March 7, 2019, a $7,810 official check from Citibank, with the remitter name "Santiago Pardo," was deposited into the Fatemeh Azmandian Account.

Victim-11

73.     On or about March 13, 2019, an individual ("Victim-11") received a phone call from an unknown caller whose phone number appeared to be from the Los Angeles Police Department. The caller identified herself as "Officer Lisa Smith." The caller explained, in sum and in substance that Victim-11's identity had been used to commit crimes and that Victim-11 would need a new social security number. The caller also told Victim-11 that her bank account would be frozen and that she needed to transfer her money into an account provided by the caller.

74.     At the instruction of the caller, on or about March 13, 2019, Victim-11 made a $20,371.07 wire transfer to Citibank account ending 0145, held in the name of "Nixon Jose Solarte" (the "Solarte Account").

14

75.     On or about March 13, 2019, a $2,190 official check, made payable to "Fatemeh Azmandian," was drawn from the Solarte Account at Citi.

76.     On or about March 13, 2019, a $2,190 official check from Citibank, with the remitter name "Nixon Jose Solarte," was deposited into the Fatemeh Azmandian Account.

Victim-12

77.     On or about April 29, 2019, an individual ("Victim-12") received a phone call from an unknown caller. The caller stated, in sum and substance, that the caller was "Officer Sebastian Brown" with the Kearny, New Jersey Police Department, that Victim-12's identity had been used to commit crimes, and that a warrant was outstanding for Victim-12's arrest. The caller told Victim-12 that in order to protect her assets, Victim-12 needed to transfer her money into secure accounts provided by the caller and his colleagues.

78.     At the instruction of the caller and his colleagues, Victim-12 made the following monetary transfers, among others:

a.     On or about April 29, 2019, Victim-12 made a $24,700 wire transfer to Wells Fargo account ending in 6027, held in the name of "Daniela Gomez" (the "Gomez Account").

i.     On or about April 30, 2019, a $20,000 cashier's check, made payable to "Fatemeh Azmandian," was drawn from the Gomez Account at Wells Fargo.

ii.     On or about April 30, 2019, a $20,000 cashier's check from Wells Fargo, with the remitter name "Daniela Gomez," was deposited into the Second Alternate Capital One Account.

iii.     On or about May 3, 2019, $20,000.55 was transferred from the Second Alternate Capital One Account to the Fatemeh Azmandian Account.

b.      On or about April 30, 2019, Victim-12 made a $22,950 wire transfer to Chase account ending in 9331, held in the name of "Cristian Andrews Calderon Martinez" (the "Martinez Account").

i.      On or about May 1, 2019, an $18,360 cashier's check, made payable to "Fatemeh Azmandian," was drawn from the Martinez Account at Chase.

ii.      On or about May 1, 2019, an $18,360 cashier's check from Chase, with the remitter name "Cristian Andrews Calderon Martinez," was deposited into the Fatemeh Azmandian Account.

c.      On or about April 30, 2019, Victim-12 made a $21,250 wire transfer to Wells Fargo account ending in 8332, held in the name of "Lina Cardona" (the "Cardona Account").

i.      On or about May 1, 2019, a $6,640 cashier's check, made payable to "Fatemeh Azmandian," was drawn from the Cardona Account at Wells Fargo.

ii.      On or about May 1, 2019, a $6,640 cashier's check from Wells Fargo, with the remitter name "Lina Cardona," was deposited into the Fatemeh Azmandian Account.

d.      In sum, the Fatemeh Azmandian Account received a total of $45,000 traceable to Victim-12 ($20,000 via the Gomez Account, $18,360 via the Martinez Account, and $6,640 via the Cardona Account). Together with the $10,000 traceable to Victim-7, the $10,000 traceable to Victim-9, the $7,810 traceable to Victim-10, and the $2,190 traceable to Victim-11, the Fatemeh Azmandian Account received a total of $75,000 from these five victims.

79.      On or about December 9, 2019, the Honorable Sarah L. Cave, United States Magistrate Judge, issued Seizure Warrant 19 Mag. 11486 ("Seizure Warrant-3," a copy of

which is attached as Exhibit C, and incorporated herein by reference) authorizing the seizure of all funds up to $75,000 held in the Fatemeh Azmandian Account upon a finding that the Fatemeh Azmandian Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

80.     On or about December 9, 2019, the Government seized $75,000 in United States currency from the Fatemeh Azmandian Account — *i.e.*, the Fatemeh Azmandian Currency — pursuant to Seizure Warrant-3.

Victim-13

81.     On or about December 14, 2018, a woman ("Victim-13") received a phone call from an unknown caller. The caller stated, in sum and substance, that the caller was with law enforcement, that Victim-13's social security number had been used to commit crimes, and that Victim-13's bank account was linked to the crimes. The caller told Victim-13 that to avoid arrest, Victim-13 needed to transfer her money into accounts provided by the caller.

82.     At the instruction of the caller, on or about December 14, 2018, Victim-13 made a $35,000 wire transfer to Chase account ending in 7131, held in the name of "Juan Sebastian Mejia Orozco" (the "Orozco Account").

83.     On or about December 14, 2018, at least $24,660 in cash was withdrawn from the Orozco Account.

84.     On or about December 17, 2018, a Regions Bank customer named "Juan S. Mejia Orozco" used cash to purchase a $9,650 cashier's check, which was then deposited into Wells Fargo account ending in 8700, held in the name of "Fatemeh Azmandian" (the "Wells Fargo Account").

85.     On or about December 9, 2019, the Honorable Sarah L. Cave, United States Magistrate Judge, issued Seizure Warrant-3 authorizing the seizure of $9,650 on deposit in the Wells Fargo Account upon a finding that the Wells Fargo Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

86.     The Government was unable to execute Seizure Warrant-3 for $9,650 in the Wells Fargo Account because on or about January 25, 2019, $107,439.14 — which was the entire balance of the Wells Fargo Account — had been transferred from the Wells Fargo Account to the Fatemeh Azmandian Account.

87.     On or about January 29, 2020, the Hon. James L. Cott, United States Magistrate Judge, issued Seizure Warrant, 20 Mag. 1060 ("Seizure Warrant-4," a copy of which is attached as Exhibit D, and incorporated herein by reference) authorizing the seizure of $9,650 on deposit in the Fatemeh Azmandian Account upon a finding that the Fatemeh Azmandian Account contained funds representing proceeds traceable to and/or property involved in the Scheme.

88.     On or about January 30, 2020, the Government seized an additional $9,650 in United States currency from the Fatemeh Azmandian Account pursuant to Seizure Warrant-4.

89.     The Government seized a total of $84,650 in total from the Fatemeh Azmandian Account pursuant to Seizure Warrant-3 and Seizure Warrant-4.

### III.   CLAIMS FOR FORFEITURE

#### Count One

**Forfeiture Under 18 U.S.C. § 981(a)(1)(A)**
**(Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. § 1956 or Property Traceable to Such Property)**

18

90.   Paragraphs 1 through 89 of this Complaint are repeated and re-alleged as if fully set forth herein.

91.   Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, or any property traceable to such property, is subject to forfeiture to the United States.

92.   18 U.S.C. § 1956(a)(1)(A)(i) & (a)(1)(B)(i) imposes a criminal penalty on any person who:

> knowing that the property involved in a financial transaction involves the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . .
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity;
>
> (B)   knowing that the transaction is designed in whole or in part (i)   to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

93.   As defined in 18 U.S.C. § 1956(c)(7), "specified unlawful activity," includes, among other things, racketeering activity as defined in 18 U.S.C. § 1961(1). Section 1961(1), in turn, defines racketeering activity to include wire fraud, in violation of 18 U.S.C. § 1343.

94.   Title 18, United States Code, Section 1343 provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any

19

writings, signs, signals, pictures, or sounds for the purpose of
executing such scheme or artifice, shall be fined under this title or
imprisoned not more than 20 years, or both.

95.     By reason of the foregoing the Defendants in Rem are subject to forfeiture

to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property

involved in a money laundering transaction or an attempted money laundering transaction, in

violation of Title 18, United States Code, Section 1956, or as property traceable to such property.

**Count Two**

**Forfeiture Under 18 U.S.C. § 981(a)(1)(A)**
**(Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. §**
**1957 or Property Traceable to Such Property)**

96.     Paragraphs 1 through 89 of this Complaint are repeated and re-alleged as

if fully set forth herein.

97.     Pursuant to Title 18, United States Code, Section 981(a)(1)(A) any

property, real or personal, involved in a transaction or attempted transaction in violation Title 18,

United States Code, Section 1957, or any property traceable to such property, is subject to

forfeiture to the United States.

98.     18 U.S.C. § 1957 imposes a criminal penalty on any person who

"knowingly engages or attempts to engage in a monetary transaction in criminally derived

property of a value greater than $10,000 and is derived from specified unlawful activity."

Section 1957(f)(1) defines "monetary transaction" to include the "deposit, withdrawal, transfer,

or exchange, in or affecting interstate or foreign commerce, of funds . . . ."

99.     Section 1957(f)(3) defines "specified unlawful activity" to have the same

meaning as given in Section 1956. As set forth above, wire fraud, in violation of 18 U.S.C. §

1343, is a specified unlawful activity for purposes of Section 1956.

20

100.     By reason of the foregoing the Defendants in Rem are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1957, or as property traceable to such property.

### Count Three

### Forfeiture Under 18 U.S.C. § 981(a)(1)(C)
### (Property Constituting or Derived from Proceeds Traceable to a Violation of 18 U.S.C. § 1343 or Property Traceable to Such Property)

101.     Paragraphs 1 through 89 of this Complaint are repeated and re-alleged as if fully set forth herein.

102.     Pursuant to Title 18, United States Code Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense.

103.     As set forth above, for purposes of Section 1956, "specified unlawful activity" includes wire fraud, in violation of 18 U.S.C. § 1343.

104.     By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property constituting or derived from proceeds traceable to a violation of Title 18, United States Code, 1343.

### Count Four

### Forfeiture Under 18 U.S.C. § 984
### (Civil Forfeiture of Fungible Property)

105.    Paragraphs 1 through 104 of this Complaint are repeated and re-alleged as if fully set forth herein.

106.    Section 984 of Title 18, United States Code, provides, in pertinent part:

(a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals–

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

* * *

(d) Nothing in this section may be construed to limit the ability of the Government to forfeit property under any provision of law if the property involved in the offense giving rise to the forfeiture or property traceable thereto is available for forfeiture.

107.    Accordingly, pursuant to Section 984, the Government need not trace the currency contained in the Defendants-*in-rem* directly to the underlying offense. By reason of the foregoing, the Defendants-*in-rem* became and are subject to forfeiture to the United States of America, pursuant to Title 18, United States Code, Sections 981 and 984.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
April __24__, 2020

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By: _____
Alexander Li
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2265

**VERIFICATION**

STATE OF NEW YORK            )
COUNTY OF NEW YORK         :
SOUTHERN DISTRICT OF NEW YORK  )

        ROBERT M. CAPPADONA, being duly sworn, deposes and says that he is a

Special Agent with the Federal Bureau of Investigation (the "FBI"), and as such has

responsibility for the within action; that he has read the foregoing complaint and knows the

contents thereof, and that the same is true to the best of his knowledge, information, and belief.

        The sources of deponent's information and the ground of his belief are official

records and files of the FBI, information obtained directly by the deponent, and information

obtained by other law enforcement officials, during an investigation of alleged violations of Title

18 of the United States Code.

ROBERT M. CAPPADONA
Special Agent
Federal Bureau of Investigation

23